Good morning again, ladies and gentlemen, we'll proceed to the second half of this consolidated proceeding, Perry v. Hollingsworth. Perry and City and County of San Francisco v. Hollingsworth. Good morning again, Mr. Cooper. And good morning again to you as well, Your Honor. The people of California and Americans throughout the country are engaged in an earnest and profound debate about the meaning, purposes, and definition of marriage. The issue is a momentous one, for it goes to the very nature of an ancient and ubiquitous social institution that is, in the words of the United States Supreme Court, fundamental to the very existence and survival of the human race. So this court is presented with, in our submission, this fundamental question. It is whether the definition of marriage, that momentous issue, is one for the people themselves to resolve through the democratic process, as they did in enacting Proposition 8, or whether our Constitution takes that issue essentially out of their hands and decides it for them, as the plaintiffs argue here. Could the people of California reinstitute school segregation by a public vote? No, Your Honor. Why not? Well, Your Honor, that would be inconsistent. With what? With the United States Constitution. As interpreted by the U.S. Supreme Court? Yes, yes. Yes, Your Honor. And so the issue… But they probably could have done that in 1870 or 1880 or 1890, right? Very possibly, Your Honor. Yes, very possibly. How is this different? Your Honor, this is nothing like, for example, the racial restrictions at issue in loving, where there is simply no legitimate, rational basis whatsoever on any purpose of marriage that one could possibly conceive to deny the right of a mixed-race couple to marry. On every basis on which one can identify a purpose of marriage, a mixed-race couple satisfied those purposes. So the question is… You suggest that Baker would mandate that the state has an absolute right to prescribe the conditions upon which the marriage relationship between its own citizens should be created, correct? Not an absolute right, Your Honor. We agree that that right is limited by whatever restrictions the United States Constitution may place on it. Okay, so then loving versus Virginia falls right into that restriction. Directly, Your Honor, in the Supreme Court. And loving said that the racial restriction violated the central meaning of the 14th Amendment, both its due process clause and its equal protection clause. So if I agree with that, then what do I say is the general notion when confronting Turner v. Safely or Safly? The case dealing with the right of prison inmates to marry. Your Honor, the central, I guess, point that we want to advance here is this. What is the distinguishing characteristics of opposite-sex couples that are relevant to interests that the state has authority to implement? Are you arguing to me that it's enough for a rational basis for the federal court to get involved in that right of marriage? We are arguing that the test that applies here is a rational basis, a test, and that if there is any rational basis for the opposite-sex traditional definition of marriage, then that if this Court concludes that there is nothing to say in favor of the definition of marriage that has prevailed in this country and in all places, essentially at all times since time immemorial, there's nothing to say in defense of it, there's no rational basis for it, then this Court would have to strike it down. But that is the test that we submit to you that applies, Your Honor. And we believe that there is clearly a rational basis justifying the traditional definition of marriage. The key reason that marriage has existed at all in any society and at any time is that society has no particular interest in a platonic relationship between a man and a woman, no matter how close, no matter how committed it may be, or emotional relationships between other people as well. But when a relationship between a man and a woman becomes a sexual one, society immediately has a vital interest in that for two reasons. One, society needs the creation of new life for the next generation. But secondly, society, its vital interests are actually threatened by the possibility that an unintentional and unwanted pregnancy will mean that the child is born out of wedlock and is raised by, in all likelihood, its mother alone. And that directly implicates society's vital interests, both in terms of its immediate interests, because society will have to step in and assist that single parent, in all likelihood, that is what usually happens, in the raising of that child, but as well in the undeniable fact that children raised in that circumstance have poorer outcomes. That sounds like a good argument for prohibiting divorce, but how does it relate to having two males and two females marry each other and raise children as they can in California and form a family unit where children have a happy, healthy home? I don't understand how that argument says we ought to prohibit that. Your Honor, the point and the question is whether or not the state of California has a rational reason for drawing distinction between same-sex couples who cannot, without the intervention of a third party of the opposite sex, procreate, and opposite-sex couples who not only can procreate, but can do so unintentionally and create unwanted pregnancies. That is not a phenomenon that exists with respect to same-sex couples. But what is the rational basis for an initiative that when California law really says that homosexual couples have all the rights of marriage, all the rights of child-rearing, all the rights that others have, what is the rational basis then if in fact the homosexual couples have all of the rights that the heterosexual couples have? We're left with a word, marriage. What is the rational basis for that? Your Honor, you are left with a word, but a word that is essentially the institution. And if you redefine the institution, if you redefine the word, you change the institution. So you cannot separate the two. The name of marriage is effectively the institution. And the issue here is whether it will be redefined, essentially, to be a genderless institution that bears little or very no relationship to the traditional historic purpose of marriage. Why aren't the merits of this case controlled by Romer? After all, before the proposition was passed in California, same-sex couples had the right to marry. The proposition takes it away. Isn't that exactly what the proposition in Colorado did? Your Honor, in Romer, the court was dealing with a sweeping law that placed undifferentiated burdens and disqualifications on homosexuals across the board. So if you take away a bunch of rights, that's bad, but if you just take away one right, it's okay? Your Honor, it isn't a question of taking them away. Did or did not same-sex couples have the right to marry before the passage of Proposition 8 in California? Your Honor, the California Supreme Court affirmed that they did, yes. And the people of California disagreed with that, and the people of California reversed it. How is that different from what happened in Colorado? A few local communities decided that they wanted to extend preferred status to individuals, homosexuals, gays, lesbians, etc. And the voters of Colorado passed a proposition saying you cannot do that. You have no right to do that. Stop doing that. Your Honor, Amendment 2 rendered homosexuals strangers to the law. It essentially eliminated any and all protections for homosexuals with respect to the ordinary pursuits of civic life, as the court put it. It was a sweeping, undifferentiating, essentially rendered them an isolated class and strangers to the law altogether. The court stressed that it was an unprecedented in our jurisprudence kind of statute. The traditional definition of marriage, Your Honor, is anything but unprecedented in our jurisprudence. It has existed throughout the history of this country. It has been the governing understanding and definition of marriage in this state since its founding, and basically throughout the country and throughout the world for all time. The definition of marriage is not anything like the kind of statute that the court was dealing with in Romer. And in fact, in this case, I would submit to you that the question is, your question, Your Honor, is governed by the Crawford case, where the court said that it would refuse to interpret the 14th Amendment, and these are its words, to require the people of a state to adhere to a judicial construction of their state constitution when that constitution itself vests final authority in the people. But you've told us that the people of California could not reinstitute racial segregation in public education. So we know there are some things they can't do. They certainly can't do that.  The Romer case opens with a quotation from Justice Harlan's dissent in Plessy. And here's what Justice Kennedy says, The Constitution neither knows nor tolerates classes among citizens. Those words now are understood to state a commitment to the law's neutrality where the rights of persons are at stake. Aren't you flying right in the face of that? Your Honor, if there are no reasons, no rational reasons to distinguish between citizens, then the Constitution does not permit the law to distinguish between them and treat them differently. The proponents of the ballot initiative in Colorado made the perfectly logical argument that all they were doing was leveling the playing field. And Justice Kennedy said that's not right. That's not correct. And, Your Honor, it wasn't right. They were doing much more than that. They were essentially opening gays and lesbians to private and public discrimination and disabling any governmental body from intervening in that private discrimination. As Justice Kennedy emphasized, in common, every ordinary day civic life, from banking to hospitals to hotels to common carriers, all the ordinary pursuits of civic life, homosexuals were rendered strangers to the law. They could be discriminated against in these fashions. That is a far, far more sweeping and different thing than simply adhering to the definition of marriage that has prevailed in California and everywhere else since time immemorial. And, again, the question comes down to this. Are there distinguishing characteristics relevant to an interest that the state has authority to implement at work in the opposite sex definition of marriage? And if there are, then the courts cannot say that acting upon those distinguishing characteristics is invidiously discriminatory. Let me ask you a question. That's a terrific response. Let me ask you a question that's meant entirely to be neutral. Is it the preference of the proponents, let's assume for the moment that we conclude you have standing and you're here to argue, you're properly here and argue to defend the proposition? I accept that assumption, certainly. Do you want us to get to the merits of the issue here? In other words, do you want us to sidestep Baker? No, not at all. Your Honor, I believe that Baker is binding on this court. And my opening legal point would have been that, in fact, this is not the first court to take up and deal with the very 14th Amendment issues that the plaintiffs bring here today. In fact, there have been eight appellate courts, state and federal, who have addressed these issues insofar as they relate to challenges to traditional marriage laws just like Proposition 8. And all eight of those courts have upheld the traditional marriage laws and have rejected the 14th Amendment claims. And one of those cases, Your Honor, is Baker against Nelson. A Supreme Court case that we submit remains a good law, remains binding on this court. Well, there are some differences. It was before Romer and Lawrence, and it didn't deal with the subject of repealing a constitutional right that existed at the time it was taken away. That's a fair point, Judge Reinhart. That is a distinction with respect to the issue as it came to the Supreme Court in Baker. There had not been the earlier period in which the Supreme Court had essentially legalized same-sex marriage. So that is a fair point. The California court, sir, said that's what the Constitution says. Citizens, we have to accept that from that moment forward. It was not a matter of pulling rabbits out of a hat or something like that. They said this is what the Constitution says. Your Honor, that's fair enough. They said this is what the state Constitution says. But under the California system, it is the people themselves who retain all the sovereign political governmental power. And they are free to review that decision, to disagree with it, and reverse it. And that's what they did in Proposition 8. And so, Your Honor, we would submit to you that the case came to the people of California the same way the case came to the California Supreme Court on review from a decision from the California Court of Appeals, a lower tribunal. And the California electorate disagreed respectfully with their Supreme Court in a 4-3 decision, and they reversed it. And the Crawford case, I would submit to you, Judge Hawkins, is on the point of this. That was another case where the California courts had interpreted the California Constitution. I believe it was the California Constitution that they had interpreted to go beyond what the federal Constitution requires. And the people of California decided we're going to bring it back to the place that is required by the federal Constitution. And the court said in a state like California, where the people retain the ultimate power of the government. Well, of course, generally, you can amend the Constitution. That's true. It depends on the subject and what you're amending. And I think that's what Judge Hawkins was talking about earlier. What is it that you are amending, and can you amend that? Nobody suggests that you can't amend the California Constitution, no matter how the courts have interpreted it, as a general rule. The question is, can you amend something as—I'm not suggesting it's a fundamental right for purposes of this discussion. But is there a valid reason to amend this Constitution under the standard that we follow? Well, Your Honor, I believe that the point of Crawford is that the people are free, essentially, to disagree and reverse their Constitution. Well, not anything, as Hawkins was pointing out. You can't say yes to anything, quite. Could you say we're going to have segregated education? We couldn't say yes to that. No, Your Honor, but that's because the federal Constitution would have outlawed that quite apart from whatever the California Supreme Court had to say about it. And so it wouldn't matter if the people did that before a California Supreme Court decision or after a California Supreme Court decision. If the California Constitution had provided that there will be racial segregation, as you suggest, in connection with schools, the federal Constitution would outlaw that. And it wouldn't matter whether there had been an intervening Supreme Court decision from California also outlawing it. The point really is simply this. If Proposition 8 had been enacted before the California Supreme Court ultimately invalidated traditional marriage, if it had been enacted before that, the constitutional case that would come to you is the same as it is coming to you now with Proposition 8 having been enacted to reverse the California Supreme Court. Because under Crawford, the people of California retained the authority to reverse their Supreme Court unless the federal Constitution is violated then and there by what they did. So if you're taking away a right from a particular class without sufficient reason, let's just say using a standard, without any reasonable reason, and it's done for a reason that could only be directed at a class in a manner that is, I don't want to say invidious, but in a biased manner, and you can sometimes derive that view of bias from the action in itself, then you cannot do it. And here you have to take into account all of the circumstances that Ted Smith mentioned, for instance. You have had all of the aspects of marriage other than the title. What is the reason for wanting to take that title away from a group of people who have enjoyed it? That's where I think you get to the constitutional question. Well, Your Honor, and our submission to you is that the people of California needed no reason beyond the fact that they disagreed that their Constitution ordained that result. That their Constitution outlawed and invalidated the traditional definition of marriage. Why isn't that true of Romer also then? I beg your pardon? Why isn't that true of Romer? The people of Colorado decided that they wanted to do this, and that's what they wanted. That's what the people of California did. But that there is a limit on that. And it doesn't have to be in the federal Constitution, except that there has to be a rational basis for it, and it can't be related to bias. Yes, Your Honor. That is true. And so if Proposition 8 was coming to you without there having been this previous period in which California had approved of same-sex marriage, it would come to you in the same constitutional profile that it comes to you now. I guess our point is it isn't changed because there has been this previous period where the California Supreme Court has interpreted the California Constitution to invalidate traditional marriage. That's an interesting question, I think, in this case. Would it really be the same if the state did not go as far as California had gone? Would they be required to go that far? Or is it different when you're taking something away? You can argue that there's no difference, and I'm not sure that's a settled question. But I would think that the other side, and I know the city of San Francisco particularly did, say it's different when you're taking it away than when you're not giving. Well, Your Honor, I don't deny that there is some force to that proposition, but I do commend to you the Crawford case, which we think does support the proposition that the people, they act, if the California Court of Appeals had invalidated traditional marriage and the California Supreme Court had reversed that and said, no, our Constitution doesn't do that, no one would say that during the interim that that right had existed and the California Supreme Court had stripped the people of California of it. And what we are submitting to you, and we believe the Crawford case supports, is that the people themselves are a tribunal over their Constitution, standing in those types of shoes. Could the people of California suppose Proposition 8, in addition to addressing the subject of marriage, had done what in part the proposition in Romer did, which was to disallow civil unions? Would you have the same response? Would you have the same argument? Your Honor, I believe that the argument I'm making here would be the same, but I do recognize that the argument for the constitutionality of a proposition that accomplished that result, or perhaps I should put it, the constitutionality of that result, would be on different footing than Proposition 8 itself comes to you in. It sounds like you're a little uncertain if they had added civil unions. What if they had said, we don't want hospitals allowing visitation of dying loved ones by same-sex partners, and they added that to the proposition? Would that put it on shakier grounds? This proposition I'm advancing now, no. The point being that any time a state goes beyond, and here I'm assuming that this would go beyond what the federal constitution demands, and if it goes beyond what the federal constitution demands, then the people are free, according to the specific language of Crawford. Having gone beyond the requirements of the federal constitution, a state is free to return to the standard prevailing generally throughout the United States. So do I understand you to be saying, if the proposition had simply done away with civil unions, Crawford would say that's okay? If it had simply done away with... If the Proposition 8 had simply been addressed to disallowing civil unions, which as I understand it are allowed under California law, if that's all the proposition had said, Crawford would say that's okay? Yes, Your Honor, to the extent that civil unions are not required by the federal constitution. What does that mean, to the extent that they could take it away or they couldn't take it away? They would be able to take it away, Your Honor, unless the federal constitution itself requires the states to afford civil unions to gays and lesbians. How does that differ from Romer? They took things away in Romer that are required by the federal constitution. So there's more to it than your answer. No, Your Honor, I don't believe that the things that were put in place in Romer... In fact, I think Justice Kennedy said this wasn't just a repeal of the provisions that had been enacted in Denver and other municipalities. And he suggested if that's all it had been, it would not have been constitutionally objectionable. It went much farther than that, and in going much farther than that, it became constitutionally objectionable. I didn't mean for you to stop your sentence. If I could have permission of the presiding judge here, there are a couple of questions that I am particularly worried about. Some states have not extended domestic partnership rights to homosexuals. Do they have a stronger argument for a rational basis than does California? And I want to ask you that straight out, because I'm trying to get you to differentiate your argument. It seems to me that your argument can be made as to rational basis if there weren't all kinds of rights already given to those homosexuals in domestic partnership rights. So I'm asking you straight out, some states haven't done it. Do they have a stronger argument then for rational basis than does California? Your Honor, to the contrary, I think they do not. I don't think they have as strong an argument. It would be quite perverse if the people of California, in enacting and addressing the very legitimate interests and needs of gays and lesbians and their families, by enacting domestic partnership laws and going as far as a state can do short of redefining marriage. And the state insisted in Proposition 8 that it not redefine marriage and that it preserve that institution for the specific purposes that it has always served. I don't believe a state, Judge Smith, has weakened its constitutional position when it goes as far as it can to address the interests of gays and their families. I guess my worry is, and this is what I'm really worried about in your particular situation if I adopt your argument, is that I'm trying to find the rational basis in this particular situation. When California has gone as far as it has, what is the rational basis that we really have? I'm wondering if it's just not to maybe market the marriage of a man and a woman or promote a special relationship in society. Is that enough to meet the rational basis? Your Honor, I believe it's to preserve the institution of marriage for the purposes that it has always served. The unique purposes that flow from the unique interests that society has that in turn flow from the unique procreative, natural procreative capacity of men and women. The courts that have upheld traditional definition of marriage have uniformly noted that it is entirely rational for, in fact, the Eighth Circuit in the Bruning case dealing with a proposition from Nebraska that contained identical language to Proposition 8. That it was entirely rational for the people in that state to confer and retain the inducements and benefits of the institution of marriage for opposite-sex couples who can procreate, and including procreate unintentionally, creating unwanted pregnancies that threaten society's interests, and not extend marriage to same-sex couples who simply don't represent that same societal interest. The interests of society that are vitally implicated by sexual relationships between opposite-sex couples are simply not implicated in the same way. My time is up. I want to see if Judge Smith is through with his questions. Well, I'll skip the last question. Thank you. My last question was, do you think this rationale... Since the judge, the good judge, has given me opportunity, do you think this rationale would satisfy the more searching form of rational basis Justice O'Connor elaborated in Lawrence? Your Honor, if this case is to be decided by heightened scrutiny, then obviously it is a harder case. But we think it does satisfy heightened scrutiny. The essential proposition, Your Honor, being that the main objection to the rationale that I've articulated here is that infertile couples are nonetheless allowed to marry, and that is true. No society has ever insisted that marriage produce children. But, Your Honor, the question then becomes, how would society draw that line? How would society do that? Orwellian measures designed to police fertility before marriage, Orwellian measures designed to presumably annul marriages that are not childless. We just don't think that... And those measures would undoubtedly violate the constitutional rights of the individuals involved. So we don't think that any less restrictive method could be, as a practical matter, employed. And I appreciate the Court's indulgence. Thank you, Mr. Kupfer. I think he indulged me, and I hope you didn't go too long so that he's aggravated with me. Thank you. Well, you didn't save any time, but we'll give you two minutes anyway. I appreciate that, Your Honor. May it please the Court. My name is Theodore Olson. I'm here on behalf of the plaintiffs. It is important to focus on the fundamental fact that California has engraved discrimination on the basis of sex and sexual orientation into its fundamental governing charter. The label given to Proposition 8 in the official voters' pamphlet said it all. It eliminates the right of same-sex couples to marry. This proposition marginalized and stripped over a million gay and lesbian Californians of access to what the Supreme Court of the United States has repeatedly characterized as the most important relation in life. Mr. Olson, you do think there's a difference between taking the right away and not affording it in the first place? Yes, we do, Judge Reinhart. That is what the United States Supreme Court said in a case going back to Reitman v. Mulkey in 1964, where the California citizens acted through this process and took away rights with respect to discrimination in housing. And that is what the Supreme Court said in Romer v. Colorado, that it does make a difference. Now, I don't think, as an original matter, that it would be constitutional if Congress had enacted Proposition 8 five years ago, before the in-ray marriage cases. But I think it makes it worse, and that's what the United States Supreme Court has said, that taking away of the rights in that context enhances the effect of the purported constitutional change. What's your answer to a case that Mr. Cooper referred to several times, the one about busing and other methods of bringing diversity to the school? That's the Crawford case, and what the Crawford case did was say that to the extent not required by the Constitution, remedies for constitutional violations could be restricted by the people of the state of California. But that doesn't change anything. I heard Mr. Cooper mention the Crawford case five times, not once anywhere in the Crawford case does it suggest that an initiative measure somehow rises above the 14th Amendment to the Constitution of the United States. And that's certainly what the Reitman case held, and that's certainly what the Romer case held. Are you suggesting, then, that a gay marriage is required by the Constitution of the United States? What is required by the Constitution of the United States is the fundamental right of its citizens to marry. Now, Mr. Cooper defined that as it has always been between a man and a woman, but the United States Supreme Court has never said that. What the United States Supreme Court has said in 14 cases involving the right to marriage in the context of abortion, in the context of prisoners, in the context of contraception, and in the context of divorce, that the right to marry is an aspect of the right to liberty, privacy, association, and identity. What I'm trying to find out is your argument here in response to Crawford that there is a constitutional right to gay marriage. Do we have to reach that point? Because what you're answering is that they're taking away a constitutional right. And if that's your answer, fine. If not, I'd like to know that also. My answer is that they are taking away a constitutional right given by the state of California, recognized by the state of California. That in and of itself makes Proposition 8 unconstitutional under Romer and Reitman. But I would also say that it is also constitutional, and I would not call it, Judge Reinhardt, gay marriage. Or I wouldn't call it single-sex marriage any more than the Supreme Court of the United States called it interracial marriage. What the Supreme Court has said 14 times is that it's a right of liberty, association, privacy. You can say whatever you want, but in deciding the case, I think we're entitled to know whether your answer to Crawford is that, yes, you can't take away a constitutional right, and this is taking away a constitutional right under the 14th Amendment. And it's dependent on our finding that they would be taking away accountability? No, it is not, because I went on to say that the right to marriage is a right of an individual. And by the way, Mr. Cooper talks in terms of the right of society, society's interest in procreation. It is not society's right. The rights under the Constitution are not the rights of California. They're not the rights of voters of California. They're rights of citizens of the United States under the Bill of Rights and the 14th Amendment. And if California could insist that something to do with procreation be engraved onto the right of marriage, it could take that away. It could say, we don't want, we're overpopulated, we don't want procreation, and we'll deny people the right to marry. This is not, this is a fundamental individual right, and what the Supreme Court said, and the reason I'm emphasizing this point, Judge Reinhart, because if you look at it from the standpoint of a right of two particular individuals, maybe they were Mr. and Mrs. Loving in the Virginia case, of an interracial marriage, it was marriage, it was their right to get together, and what the Supreme Court said in the Griswold case, we deal with a right of privacy older than the Bill of Rights. Marriage is a coming together, for better or worse, hopefully enduring and intimate to the degree of being sacred. It is an association that promotes a way of life, and so forth. This is from the Griswold case, one of 14. Mr. Olson, I'm not trying to express a view on gay marriage, or any marriage at this point. I'm trying to find out how far we have to go if we are to accept your view of this case. Certainly, if we start out from the assumption that everybody is entitled to marry everybody else, regardless of sex, regardless of sexual orientation, if we have to reach that issue, we would, but as you well know, as you argued, the Ploutt case, we are advised not to reach a constitutional question unless we have to. I was not planning on reaching that question to you this early in the discussion, but it seems to come in relation to how we deal with the Crawford case, and it was for that reason that I was asking you whether, in order to distinguish Crawford, you are saying that it's necessary to take the position that the only thing you can't take away as a state is a right under the 14th Amendment. There seems to me there's two questions in that. How far you have to go and the significance of Crawford. You do not have to go any further than what the Romer case requires you to go. The Romer case says taking away the constitutional right of individuals who are homosexuals because of their classification as homosexuals violates the United States Constitution, even under a rational basis test. And I would say, if I get a chance to do that, this is the clearest case I can imagine of heightened scrutiny. But, in addition to that answer, which I submit, is the answer to your question, how far do we have to go, but the additional answer with respect to the Crawford case is a completely separate thing, it seems to me, because Crawford was saying, yes, the citizens can change non-constitutionally required remedies for constitutional violations. That's different than this. And so, for the Crawford case, in my judgment, has nothing to do with this case, and I would be happy to put the Crawford case against the Reitman case, the Romer case, the Loving case, and Lawrence v. Texas. It cannot possibly penetrate the full weight of those four decisions. And I guess one additional answer, and I think it's important since I slipped into mentioning the Lawrence case, the United States Supreme Court has determined that intimate sexual conduct between persons of the same sex is constitutionally protected. And the Supreme Court has said, as I said, marriage is a fundamental right. How can the fundamental right of marriage be taken away by Californians from persons because they're engaged in a constitutionally protected activity? How can the constitutional right be taken away because of the constitutionally protected activity? It cannot exist. If you put the Lawrence case together with the marriage cases, Loving case, and so on and so forth, you cannot take away that right, which is not a right of same-sex persons. It's a right of all citizens, and it's a right to be with the person that they love, to have an association that they select, to live a life of privacy, to identify themselves as self-identification, as Justice Kennedy talked about in both Romer and Lawrence. That right cannot be taken away from individuals in this state because of their sexual orientation. It is discrimination on the basis of sex, and it's discrimination on the basis of sexual orientation, and even under a rational basis test, the proponents of Proposition 8 cannot come up with a reason. They've tried various different reasons throughout the election campaign and this litigation, with various different reasons. They started off with the proposition, and it's in the ballot materials, that it was necessary to protect our children from thinking that gay marriage was okay. That was the original rationalization for the statute that was in advertisements, and it's in the ballot measures submitted to the voters. Protect our children from thinking that gay marriage is okay. Well, what is the matter with that? It must be something about gay people that are getting married that would be disturbing to California voters, and you have to take that risk away from them. They basically retreated from that proposition, and it only appears on pages 107 and 108 of the brief that they filed, and basically they're now saying that if gay marriage were permitted, this is what they say on page 107 or 108 or 109 of their brief, Proposition 8 needs to be enacted because the existence of same-sex marriage will somehow, they don't use the word somehow, will make children prematurely occupied with issues of sexuality. That is nonsense, that you can enact a proposition that walls off the citizens of this state from a fundamental right because you're worried that otherwise children might be prematurely preoccupied with issues of sexuality. That, of course, if that was a justification, it would equally warrant banning comic books, television, video games, and conversations with other children. In deciding whether rational basis saves this proposition, what do we look to? Well, I'm not sure your question is asking me whether it should be rational basis and what would be the justification. Let's assume it's rational basis. Do we look to the record that was made in district court, or do the cases suggest to us that we imagine whether there is any conceivable rational basis and apply that? The answer is that that is too attenuated, just to imagine something from the sky that someone might conceivably imagine. And the city of Claiborne case and the Romer case makes it clear, and then Justice Kennedy, in decision for the court in Romer case, says we must look further than that. We must look into the reasons, and they must make sense, and they can't be attenuated, and they can't be motivated by fear of people that we don't like or minorities. It's got to be more than that, and most of all, it has to be rational. And that's why I was looking through the reasons that they've advanced. One is this protect our children, and we've seen, at least I think, it's manifestly clear that that is not a rational basis, because you can't do that, because basically that's based upon the idea that there's something wrong with these people and we must protect our children from them. That won't work. Suppose, and just assume this for the purpose of my question, that we were to conclude that this accidental pregnancy argument is in fact a rational basis. Have the proponents of the proposition or the imperial clerk given up that argument because of the arguments they made in the political process leading up to its passage? No, but I think that the court has to look at all of that in the context. What the court has said, you have to look at the context in which the measure was passed. Now, I will say, if I move to that point, this concept of rational procreation, there is no way that Proposition 8 prevents, by keeping individuals of the same sex from getting married, have anything to do with heterosexual marriage. Same sex marriage is not going to discourage heterosexual people from getting married. It is not going to keep them from getting divorced. It is not going to have any effect at all on their choice about having children. On the other hand, the elimination of Proposition 8 cannot possibly hurt the heterosexual relationship at all. In this case, the evidence was clear from the witnesses in this case, that there would be no harm as a result of the elimination of Proposition 8. And Mr. Cooper, quite candidly, when he was asked that question at the summary judgment hearing, repeatedly by the district court, what harm can there be? He said, I don't know. Now, what he meant, and I'll let him speak for himself on this, but what he was saying is that we don't know the impact of allowing same sex marriage and how it might affect this very important institution of marriage. Well, it's a very important institution of marriage because it means a great deal to the citizens of this state. You know, people in popular election campaigns make all sorts of nonsensical arguments. I haven't heard that. Not to vote for someone or to vote for someone. But, you know, my point is this, that my reading of these cases suggests that this is a matter of what is referred to as legislative facts, that it really matters not what a whole bunch of people might suggest one way or another. This is sort of a legislative fact thing that we look to. And if we can conceive, if it can be conceived and argued that there's a rational basis to uphold the constitutionality of Prop 8, that satisfies the test. Well, I will have several answers to that. One, this idea of legislative facts means that instead of the witnesses that talked about the history of discrimination, the damage that discrimination has done, the immutable characteristic that we're talking about, people don't choose to become gay. They have a characteristic, which this court in the Hernandez case and the California Supreme Court has talked about. And with respect to the immutability, if I can have a slight digression, is that all of the plaintiffs and other witnesses in this case and the experts and the judges' findings suggested that this is a characteristic that's immutable. And we have all of those reasons why in the long history of discrimination, which Mr. Cooper stipulated to at the trial, the damage that's done as a result of the discrimination, all of this requires heightened scrutiny. But if you were to go to and imagine a rational basis standard articulated along the lines that you did, which I don't think is the test, I don't think that's at all consistent with the city of Claiborne and it's not consistent with Romer at all. But if you were to say that, what can we imagine? What conceivable thing can we think of that would justify doing the damage that's being done to our citizens in California? What is it? I don't know what it is. Well, just a minute. Maybe I could maybe suggest a couple of things. Do you believe that the idea of distinguishing marriage from domestic partnerships in name only in order to promote it as a vehicle for procreation, responsible procreation, an inclusion of one group promotes legitimate government purpose, all things being equal, children are most likely to thrive when raised by a father and mother who brought them into this world, do you believe that that would survive rational basis review? It would be slightly inconsistent with the evidence in this case, number one. Number two. Well, it's slightly inconsistent with the evidence in this case. If you naturally jump to the conclusion that the only evidence in this case is that which the judge has suggested is in the record, rather than that legislatures do things for their own reasons and then the judge might find if there's evidence for it or against it. But I'm suggesting, now just sit the question. The idea of distinguishing marriage from domestic partnerships in name only to promote it as a vehicle for procreation, all else being equal, children likely to thrive when raised by a father and mother who brought them into this world, that it is irrational. Yes. In the first place, Mr. Cooper specifically said just a few moments ago, the name is the institution. Those are his words, virtually verbatim. The name is the institution. And the witnesses at this trial, the witnesses that came forward and were willing to be cross-examined, and were willing to testify under oath, not the law review articles and so forth that were put in by the proponents, but the witnesses that came forward in this case, and the plaintiffs, and other witnesses in this case, talked about what marriage meant to them and what it means in this society as an institution. Not just what the Supreme Court said, but we had what the plaintiffs said, what the experts said, what the Supreme Court said, and what the district court found. And there's nothing that would suggest that children thrive in a better way in that environment. In fact, the proponents' expert, Mr. Blankenhorn, testified that the children in those relationships would be better off, that we would be a better country, we would be closer to the American ideal if same-sex marriage were permitted. Now, it's easy to say those things, that you have to have a better situation where a child is in with a mother and a father, but allowing the other problem with that is that the remedy doesn't fit the so-called problem. In other words, restricting marriage to people of opposite sex doesn't mean that there won't be people in same-sex marriages. California permits that. And the courts, there's something like 37,000 children in same-sex households in California today. There are also 18,000 same-sex marriages which are not at issue in this case. It's easy to say that children would be better off in that relationship, but if you have heterosexual relationships permitted in California and marriages between persons of the same sex, it doesn't change where the children will be raised. If a child is a product of a biological relationship between a man and a woman, that's up to that man and that woman to keep them together. I think Judge Reinhart suggested that a better remedy for that would be to prohibit divorce, but that's not something that Californians are interested in doing. Are we free to use anything other than the rational basis test in the Ninth Circuit? Oh, yes, I believe very strongly that you are. The Hernandez case talks about immutability. To the extent that you're referring to any other aspect of the doctrine of heightened standard, I think that has been ventilated and the issues that would support an enhanced heightened scrutiny are all present and you would be bound by what the Supreme Court has said with respect to that. How about our Witt case? I think the Witt case supports exactly what I was just saying. You argue factual circumstances are different in Witt and high-tech gays, but I guess, do you have authority that the factual circumstances alone would allow us to make a different holding than a prior three-judge panel? I think that the Hernandez case, which is a subsequent decision, already addresses that issue, and I think the case that Judge Reinhart focused on involving the federal public defender, I think it was Levinson, also addressed that point. Well, it wasn't the case, unfortunately, but it was an administrative ruling. Well, I thought the wisdom in that case was superfluous. And the reasoning, I think, in that I couldn't do a better job in answering the earlier question than the reasoning set forth in writing in that case. And with respect to the Baker case, the Supreme Court has made it very clear that when the facts are different and the precise issue is not the same, sexual orientation was not presented in that case. That was strictly a gender case, not a sexual orientation case. The facts here are different, not just the Romer situation, where California has recognized same-sex marriages and then has taken it away, but California has an interesting, crazy-quilt system of laws in this state with respect to marriage. Some people may be married because they're heterosexual, and some people may not be married because they wish to marry someone of the same sex. Some people who were married to someone of the same sex may stay married, but if they were to get a divorce, they couldn't even remarry the same person. And some persons that are out of state, and if their marriage is legal outside the state, then they are recognized in California. We have a rational system here. And finally, with respect to the Baker case, the doctrinal ground has changed because of the Supreme Court's sex discrimination cases, and it's changed with respect to the Romer case, and it's changed with respect to Lawrence v. Texas. What this case comes down to, it seems to me, that California has built a fence around its gay and lesbian citizens, and it's built a fence around the institution of marriage, which the Supreme Court says, not based upon sex or procreation or anything else, is the most important relation in life. And the citizens of California, within that one fence, because of their sexual orientation, are denied access to what every other citizen in California has that are enclosed within that other fence. That is a violation of the Equal Protection Clause, and it's a violation of the Due Process Clause. Are we free in view of the way the Supreme Court has told us to decide constitutional issues, that the broadest should be avoided, the narrowest should be adopted? Are we free to do anything other than decide the issue of whether California's repeal of an initiative constitutes a violation? Your closing speech would require a holding that any state that did not permit gay marriage would be in violation of the Constitution. There is a possibility, I think in this case, of saying that Proposition 8's withdrawal of the right of gay marriage from gays and lesbians is unconstitutional, under the circumstances that they enjoyed that right, that they are given every other aspect of marriage, and all that is taken away is the honorific designation. Are we free to go beyond a holding, if we were to rule in your favor, a holding that the repeal of the right to use the label marriage and to receive a certificate, that under those circumstances it's a violation? Can we, in view of Plout and similar cases, go farther than that? I don't think, by the way, you mentioned that I was involved in that case, I don't think that case in any way should inhibit you from doing what I think is... I think the answer to your question is that you could decide this on the narrow ground that the Romer case gives to you, put in conjunction with in re marriage from the California Supreme Court. But I think this case is... I don't think there's anything in the United States Supreme Court jurisprudence, including the Plout case or anything else, that suggests that you can't look at the larger constitutional question, which that earlier question is subsumed within. What is California done? California has taken a class of citizens and put them in a separate category, whether they had a different category before or not. And that that act of discrimination, there's no doubt that it is discrimination. And there's no doubt that it does great harm. The only question is, can it be justified under any standard of constitutional analysis? And I submit that it cannot be justified under any standard of constitutional analysis, because at the lowest standard, rational basis, you'd have to know what is rational. And all of the arguments that my opponent is making with respect to how valuable the institution of marriage is, are not rational when it comes to the question of, well, why did you draw that line? Heterosexual people are different than homosexual people. Gays and lesbians are different than straight people, to use the vernacular. But that does not mean you can classify them, to use Justice Kennedy's words in Romer, and then exclude them from this part of society. So the rational basis analysis has to go to the justification for the exclusion. What goal is California trying to accomplish, and what it has accomplished in Proposition 8, does it pursue those goals in a proper way? That's where the rational basis falls completely down. You might say left-handed people are colorblind people. You might make some distinctions. But if you're saying they can't participate in a right because of an immutable characteristic, you have not only a due process violation, but an equal protection violation. And ultimately, that's the decision I'd like to see this court issue. Thank you, Mr. Earls. Thank you. Ms. Stewart. Thank you. May it please the Court. I want to focus on the circumstances in the context particular to California that show how singularly irrational Proposition 8 really is. First, and there are four things, but the first I want to talk about is that it imposes a special disability on gay people for reasons that California has disavowed, and that it doesn't attempt to pursue in any other arena. California regulates child-rearing and parentage separately from marriage, and Proposition 8 has nothing to do with trying to promote one family for raising children over another. Besides that, California laws that do govern parenting and child-rearing provide in every way that California continues to recognize that same-sex couples and opposite-sex couples are the same for purposes of family and child-rearing in every way that matters. As the California Supreme Court held in Straus, the Proposition 8 didn't change any of that. It didn't talk about children. It had nothing to do with the rights of gay people to form and raise families. Are we talking about a label here? We are talking about a label, Your Honor, but it's a very important label. It does have great meaning, and I think both sides of the table would stipulate to that, and I think the amount spent on this measure is testament to it. And so that leads to my second point, which is the proposition... The reason I ask that question, and it follows on a question that my colleague, Richard Smith, asked the other side, and that's this. Is a state which allows, as California apparently does, everything short of the label, in a better position to enact the Proposition 8 than a state which allows none of it? Your Honor, I don't think it's in a better position or a worse position, but what I would say is this. I mean, we agree with plaintiffs, and we tried the case with them, that treating same-sex couples differently in regard to family is unconstitutional across the board. But what happens here in California when you have the panoply of parentage laws and family-related laws that treat couples exactly the same, that underscores the irrationality of the measure. And here... How? Because family law in California both recognizes that gay people do procreate, allows them to use assisted reproduction in the same way that heterosexual people do, treats their families the same way for establishing parentage. For example, when it figures out who are the parents of a child, the sex and sexual orientation, is it relevant to the determination? It recognizes that both heterosexual people and sadly gay people as well can be irresponsible and walk away from their children. It doesn't matter how the child comes into the world. Parents do that all the time, and the state's interest is exactly the same. But nonetheless, if the rational basis is that to do this in name only is to promote it simply as a vehicle for procreation, then doesn't that survive the rational basis test? It does not, Your Honor, for two reasons. First of all, same-sex couples do procreate. They don't do it the old-fashioned way, to use terminology from one of our cases, but they do procreate. And California doesn't discourage that in any way or say one is preferable over the other. But if you were to think that excluding same-sex couples would somehow encourage heterosexual couples to procreate in some different way or to be more responsible for their children, you have to assume that there's some reason that including gay people will make heterosexual people less likely to carry out their parental duties. And the only way you can get there is to assume that somehow the association of gay men and lesbians with marriage taints the institution. And that is not a basis on which equal protection allows the state to enact laws. So I don't think it does work, Your Honor. It's not rational, and the only way it can be understood is saying there's something so wrong with gay people that they put a stain on marriage, and they'll make heterosexual people therefore avoid being married. And just equal protection doesn't allow that. So Proposition 8 regulates the title and the stature only, as the ballot pamphlet pointed out. And, you know, William Eskridge filed a brief on behalf of some law professors, and he said something that I think really says it better than I can, which is that the fact that Proposition 8 is largely symbolic and leaves rights in place while eliminating stature makes the insult that the measure visits on lesbian and gay couples obvious. What Prop 8 really is doing is the state commanding that we call gay relationships different even as it treats them the same. And that's kind of the quintessential classification undertaken for its own sake. The third point is that Strauss held that the way that Proposition 8 did what it did was that it carved out an exception to the equal protection, privacy, and due process clauses of our state constitution. And that's pretty extraordinary. It made our equal protection clause in our state constitution unequal. And Romer tells us that with discrimination of an unusual character, you have to be especially careful to consider whether it's obnoxious to equal protection. Now, any of those features that I mentioned alone would make, I think, the court have to have pause in looking at Prop 8. But when you take them together, they leave Prop 8 inexplicable by anything other than animus towards the class. But here there's a fourth point, and that is that the court doesn't have to infer animus. The context of the measure itself and the campaign really demonstrate that the purpose of the campaign was to be sure that proponents avoided associating marriage with lesbian and gay couples because it would demean the institution. It was bias. The voters amended the constitution, the state constitution, to incorporate the measure after California Supreme Court rejected it on state constitutional grounds. Why? Because it demeaned gay people. It treated them as second-class citizens. It relegated them to an inferior status. The campaign didn't say to the voters, well, gee, the court got that wrong. The campaign said to the voters, we have to put them in an inferior status because if we don't, we need children and everybody else to recognize that same-sex couples are different. They're not the same as opposite-sex couples, and they're not okay. And it portrayed opposite-sex couples as traditional and ideal, and it portrayed gay couples as a lifestyle that should be kind of kept in private. And the campaign leaders after the campaign wrote an article in which they said they deliberately packed into voters limited tolerance for gay people. The campaign went about portraying gay people. Another 30 seconds here. Over, you voluntarily gave up some time. Let me just say, Your Honor, close with this. Proponents say that in order to affirm the district court, this court must find that the majority who voted for Proposition 8 are bigots, and that is not so. Prejudice, which Cleburne defined as the belief that one group is less worthy or less deserving than others, is not always born of hatred. It may, as Justice Kennedy said in Garrett, be the result of a simple want of careful, rational reflection or an instinct to guard against people that we think are different from ourselves. That sort of intent was what was underneath Prop 8. It's plain from the face of it. It's plain from the campaign. And equal protection doesn't allow the state to enact a measure based on a view that some people are unworthy. Thank you. Thank you, counsel. Mr. Cooper. Thank you, Your Honor. Just a few moments, if you will, please, indulge me. First, Mr. Olson spoke of the Loving case at great length, but we know that if Mr. Loving had desired to marry Mr. Jeter, that the case would not have come out the same way. We know that with certainty, because Baker v. Nelson rejected that very claim, and it rejected that claim on the heels of Loving, where the gay couple who brought that 14th Amendment Loving claim relied on Loving very heavily. We also think that Mr. Olson is simply wrong when he suggests that the Baker case did not involve a classification, a claimed classification based upon sexual orientation that was just gender. Here's what the plaintiffs in Baker said. There is no justification, and this is throughout their jurisdictional statement, Your Honor, there is no justification in law for the discrimination against homosexuals. Appellants are being deprived of a basic right, the right to marry. As a result of this deprivation, they have been denied numerous benefits awarded by law to others similarly situated, dash, for example, childless heterosexual couples. This is clearly a case where they challenged the classification as one based upon sexual orientation as well as one based on gender. The Loving case would have been on all fours and would have come out, excuse me, the Baker case would have been on all fours with Loving if it were a fact that same-sex sexual relations produced children the same as opposite-sex sexual relations do. Then Mr. Olson would have a lay-down case. There would be no basis on which to draw a distinction, to identify a distinguishing characteristic with respect to any interest the state has the authority to implement. There would be no difference. And so the question is, does the state, does society, have no interest in that distinguishing characteristic? We submit to you. Is there a case that suggests that, or is that a good argument? Do you have a case to suggest that's the distinguishing characteristic or is that a good argument? I think it's both, Your Honor. I guess I'd like the case. The case I am referring to is the Garrett case, which sets forward the standard that I just quoted. And it, in turn, is quoting the Cleburne case, both of which applied rational basis review and upheld distinctions where they were drawn on distinguishing characteristics. I would also offer to the Court as well the Johnson against Robeson case, where the Court said, when inclusion of one group promotes or addresses a state interest and the addition of others would not, then the state is justified in acting upon those differences and drawing that classification. I would like to also refer the Court very quickly here. Well, let me just... Nothing's been done very quickly here. I'm sorry. I said nothing's been done very quickly here, but... And when you're in the red, that doesn't mean you have that much time remaining. Fair enough. The Court will just give me 30 seconds because this is a point that is clearly very much on the mind of the Court, and that's the Romer case. I want to share this passage with you from Romer. Yet Amendment 2, in explicit terms, does more than repeal or rescind these provisions. It prohibits all legislative, executive or judicial action at any level of state or local government designed to protect the named class, a class we shall refer to as homosexual persons. The point is that Amendment 2 was unprecedented, it was extraordinary, and whether it had repealed anything or not, standing essentially in its own shoes without regard to what the history behind it was, it was unconstitutional. It would have been unconstitutional if it had singled out and made a stranger to the law any class of persons. Again, Your Honor, thank you very much for your indulgence. Thank you very much. Thank all of you for a fascinating argument. The Court will stand adjourned. All rise. The Court is adjourned.
judges: Reinhardt, Hawkins, Nr Smith, Cjj